IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY QUENTIN KELLY, #352736<br>   Plaintiff, | * | |
|   v. | * | CIVIL ACTION NO. RDB-16-3668 |
| WARDEN FRANK B. BISHOP, JR.<br>SERGEANT CHARLES D. BIELANSKI | * | |
| CORRECTIONAL OFFICER KATHY F.<br> TROUTMAN | * | |
| CORRECTIONAL OFFICER JERRY L.<br> GIBBNER | * | |
| CORRECTIONAL OFFICER THOMAS J.<br> RYAN | * | |
| JOHN DOE#1 PLUMBING WORKER<br>JOHN DOE#2 PLUMBING WORKER<br>STATE OF MARYLAND<br>   Defendants. | * | |

*****

## **MEMORANDUM OPINION**

On November 7, 2016, the Court received for filing inmate Anthony Kelly's self-represented civil rights action filed pursuant to 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act ("ADA").[1] The Complaint seeks damages, as well as injunctive and declaratory relief, from Maryland Division of Correction personnel. Defendants have filed a

---

[1] Although Kelly cites to the ADA, he provides no claims under that statute. To state a claim for violation of the ADA, Kelly must show that he (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability. *See Millington v. Temple Univ. Sch. Of Dentistry*, 261 Fed. App. 363, 365 (3rd Cir. 2008). A physical condition may qualify as a "disability" within the meaning of the ADA because it "substantially limits one or more ... major life activities." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B). Under the law in this Circuit, to establish that he is disabled under the ADA, Kelly must prove that: he has a physical or mental impairment; that this impairment implicates at least one major life activity; and the limitation is substantial. *See Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006). He fails to show his qualifying disability under the ADA and how Title II has been violated.

Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 14),[2] as well as legal memorandum (ECF No. 14-1),[3] and a number of exhibits. ECF No. 14-3 through ECF No. 14-8. Kelly has filed an Opposition.[4] ECF No. 16.

The matter is ready for disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). Defendants' Motion, construed as a motion for summary judgment, IS GRANTED for reasons to follow.

### I. Background

Kelly, who is currently confined at the North Branch Correctional Institution ("NBCI"), alleges that on the morning of October 27, 2016, the cold water in his cell was turned off. He claims that the hot water in the cells of three other inmates was also turned off, and that this was done so that he would not think that the Warden was retaliating against him. He claims that over a two-day period he informed a number of officers either orally or by written note that he had no cold water, but received no response. Kelly complains that the lack of cold water in his cell caused his "body to shut down" and forced him to drink toilet and shower water. He claims that this action was in retaliation for his lawsuits against Warden Bishop and his staff. ECF No. 1, pp. 3-4; ECF No. 1-1. Kelly contends that every time he has filed an administrative remedy procedure ("ARP") grievance, he was informed that it was not received or had been misplaced.

---

[2] Service of process was not affected on Defendants "Joh Doe #1" and "John Doe #2" Plumbing Workers. For reasons to follow, the Complaint against these unnamed parties shall be dismissed.

[3] All exhibits are referenced by their electronic filing number.

[4] Subsequent to the filing of his Opposition, Kelly filed several motions seeking to subpoena a surveillance video, to conduct depositions, and to obtain interrogatory responses. ECF Nos. 17, 19-21. In addition, he has filed a Motion to Schedule a Date for a Bench Trial. ECF No. 23. Given the Court's dispositive ruling to follow, the Motions shall be denied.

ECF No. 1, p. 7.

## II. Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A Motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for

3

summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing

4

affidavit requirement of former Rule 56(f)) Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

> Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:
>
>> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290

F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

Because Kelly is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. Discussion

Defendants state that on October 28, 2016, a work order was submitted by Officer Gibbner to have the cold water checked in Kelly's cell, or NBCI Cell No. B 17, in Housing Unit 1, B Wing. ECF No. 14-3, at Gibbner Decl.; ECF No. 14-4, p. 2. The maintenance plumber at NBCI, Brian Shoemaker, affirms that on October 31, 2016, he responded to the work order. Shoemaker found the sink in Kelly's cell to be damaged on the cold water side, while the hot water to the sink and water to the commode were in working order. He replaced the diaphragm to the cold water side of the sink, restoring the cold water tap. ECF No. 14-5, Shoemaker Decl.; ECF No. 14-4, p. 4 Defendants generally deny that they intentionally turned off the cold water in Kelly's cell or harassed or retaliated against Kelly. ECF No. 14-6, at Bielanski Decl.; ECF No. 14-7, at Ryan Decl.; ECF No. 14-8, at Troutman Decl.

In his Opposition, Kelly takes issue with the failure of Warden Bishop to submit a verified statement when he is the "maskmind" of the underlying problem. He additionally argues that as he seeks damages, his Complaint has not been rendered moot, and there is a genuine dispute of material fact that warrants the denial of Defendants' summary judgment motion. ECF No. 16. Kelly points to Defendants' failure to provide a copy of the maintenance work order and argues that the surveillance video will show that plumbers turned off his cold water tap and turned it back on three days later. *Id*. Lastly, he asserts that he cannot present facts essential to justify his opposition because the surveillance video was not submitted into evidence. ECF No. 16-1, Kelly Aff.

### IV. Analysis

The State Defendants raise several defenses: mootness, entitlement to Eleventh Amendment immunity, the failure to state a claim, and qualified immunity. With regard to Kelly's claim against the State of Maryland, Defendants assert that the State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 & 70-71 (1989). Moreover the State of Maryland is immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-01 (1984); *C.H. v. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000). Consequently, summary judgment is entered in favor of Defendant State of Maryland.

In addition, Warden Bishop may not be held liable under a theory of *respondeat superior.* Under *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach under § 1983

if a Plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices", and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (citations omitted).

No allegation demonstrates Bishop's supervisory liability with regard to the plumbing issue addressed here. *See Shaw*, 13 F.3d at 799. Indeed, aside from Kelly's self-serving and conclusory statements, there is no evidence that Bishop had actual or constructive knowledge of the plumbing problems in Kelly's cell and that any delay in correcting the problem posed "a pervasive and unreasonable risk" of constitutional injury to Kelly. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Kelly's claim with regard to Warden Bishop is based on Bishop's supervisory position as Warden. Bishop does not appear to have been personally involved in the condition of confinement issue presented here, or that he had actual or constructive knowledge thereof. Accordingly, Warden Bishop is entitled to Summary Judgment as a matter of law.

The Court shall next examine whether summary judgment in favor of the individual Defendant correctional officers and maintenance staff would be appropriate. The pleadings, declarations, and exhibits on file demonstrate that these individuals did not violate Kelly's

constitutional rights.

Kelly's action may be construed as an Eighth Amendment condition of confinement claim. An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Kelly has failed to show that Defendants violated his Eighth Amendment rights or that his conditions of confinement claim caused him injury. Although Kelly alleges that Defendants intentionally turned off the cold water tap in his cell forcing him to drink water from the toilet and shower, the documentation furnished to the Court shows that Kelly had access to hot water and that NBCI maintenance staff fixed the problem with his cold water tap within three days of the maintenance request.[5] This is not an unreasonable period of time to correct a prison

---

[5] A copy of the Maintenance Department work and repair orders were provided as evidence. ECF No. 14-4.

plumbing problem. Further, there is no evidence that he requested and was denied alternative sources of cold drinking water during that three-day period, such as ice water or bottled water. Kelly has failed to present any evidence that prison personnel deliberately turned off his cold water, that they were deliberately indifferent to the plumbing issue in his cell, or that he sustained serious injury from the three-day period he was without a running cold water tap. Furthermore, he has failed to rebut in any way the Defendants' verified exhibits which indicate that there are no genuine issues of material fact.

**Conclusion**

Kelly has failed to prove that the named Defendants violated his constitutional rights. Summary judgment will be entered in favor of Defendants. Summary Judgment shall be entered in favor of Defendants Bielanski, Troutman, Gibbner, and Ryan, as well as Warden Bishop and the State of Maryland. The Complaint filed against the John Doe #1 and John Doe #2 Plumbing Workers shall be dismissed. A separate Order follows.[6]

Date: June 9, 2017 　　　/s/_____
　　　　　　　　　　　　　RICHARD D. BENNETT
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[6] In light of this decision, the Court need not evaluate Defendants' qualified immunity defense.